986 F.2d 1423
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Kenneth RAINWATER, Defendant-Appellant.
 No. 92-5504.
 United States Court of Appeals, Sixth Circuit.
 Feb. 23, 1993.
 
 Before KEITH and BOGGS, Circuit Judges, and GIBBONS, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant Paul K. Rainwater appeals his jury conviction of setting fire to a national forest, in violation of 18 U.S.C. § 1855. Rainwater contends that the district court erred in denying his motion for a judgment of acquittal and that the district court incorrectly applied the United States Sentencing Guidelines. We affirm.
 
 
 2
 * On November 5, 1991, Rainwater visited Virgil Douglas at his cabin in southeastern McCreary County, Kentucky, arriving around 10:00 p.m. Along the way, Rainwater bought a fifth of whiskey and two cases of beer. By the next morning, Rainwater, a self-described alcoholic, had ingested the entire fifth of whiskey and approximately thirty-six beers and had passed out on the porch of the cabin.
 
 
 3
 Sometime in the afternoon, Douglas noticed some clouds of smoke in Litton Branch Hollow, not far northwest of his cabin. Worried that the fire might spread to his property, he tried to enlist Rainwater's assistance, but waking Rainwater proved to be quite an ordeal. After about fifteen minutes of kicking, pulling, and tugging, Rainwater finally stirred. Douglas instructed Rainwater to get on Douglas's all-terrain vehicle ("ATV") and notify the forestry officials about the fire. After drinking three or four beers to settle his nerves and quiet his stomach, Rainwater drove off on the ATV, heading west.
 
 
 4
 The United States Forest Service did not need to be alerted to the fire. At 2:45 p.m., two or three fires were observed from the air in Litton Branch Hollow. At approximately 3:45 p.m., two additional columns of smoke were spotted along Rock Creek.[1]
 
 
 5
 Bob West, a Forest Service law enforcement officer, went to investigate the Rock Creek fires. Around 4:10 p.m., West was travelling east along a road that borders Rock Creek when he saw Rainwater, facing east, idling the ATV, and extending his left arm to the north road bank of the Rock Creek roadway. After Rainwater withdrew his arm, West saw flames appear where his hand had been. West watched as Rainwater pulled up a few feet further, extended his left hand, and flames again appeared where his hand was extended.
 
 
 6
 West then closed in on Rainwater, turned on his flashing lights, drew his weapon, and ordered Rainwater to get off the ATV. Rainwater quickly sped away. West chased Rainwater down the rough, winding roads. During the chase Rainwater turned to West and gestured obscenely several times. Also, the seat fell off the ATV. Undeterred, Rainwater continued along the road until he was stopped by James Hodge, a Kentucky State Police Officer who was dispatched to assist West. Hodge arrested Rainwater, whom he described as belligerent and, not surprisingly, drunk. Hodge removed a lighter from Rainwater's pocket that was in working order. At the time of his arrest, Rainwater stated, "Your deputy buddy can't prove anything."
 
 
 7
 Rainwater was charged with willfully, and without government authority, setting on fire lands owned by and under the exclusive jurisdiction of the United States, in violation of 18 U.S.C. § 1855. At trial, the government presented evidence that two or three fires burned in Litton Branch Hollow and that three fires burned in Rock Creek Hollow. The fires burned 339 acres, including 151 acres of government land and 188 acres of private property. The government charged that Rainwater set the three fires along Rock Creek Hollow. The government could not point to specific government land that the Rock Creek fires burned because the Rock Creek fires merged with the Litton Branch Hollow fires. However, the government did present evidence that the Rock Creek fires forced the firefighters to alter their strategy and move the containment line. Government witnesses testified that if the Rock Creek fires had not been started, thirty acres of government land could have been saved.
 
 
 8
 The jury found Rainwater guilty, and the district court sentenced Rainwater to five years in prison, the statutory maximum under 18 U.S.C. § 1855.
 
 II
 
 9
 Rainwater contends that the district court erred in denying his motion for a judgment of acquittal. A trial court must enter a judgment of acquittal if "the evidence is insufficient to sustain a conviction ..." for the offense charged. Fed.R.Crim.P. 29(a). Therefore, the test for denial of a motion for a judgment of acquittal is the same as the test for reviewing a claim of insufficient evidence to support a conviction. United States v. Pennyman, 889 F.2d 104, 106 (6th Cir.1989). The Supreme Court has stated that the standard of review for claims of insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985). In United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied sub nom. Freeman v. United States, 469 U.S. 1193 (1985), the Sixth Circuit explained the heavy burden placed on the defendant:
 
 
 10
 It is well established that a trial judge confronted with a Rule 29 motion must consider all of the evidence in a light most favorable to the government and grant the motion when it appears to the Court that the evidence is insufficient to sustain a conviction.... The government must be given the benefit of all inferences which can reasonably be drawn from the evidence ... even if the evidence is circumstantial.... It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt.
 
 
 11
 In order to convict Rainwater, the government had to prove 1) that Rainwater burned land owned by the United States, 2) that Rainwater did not have authority to set the fire, and 3) that Rainwater set the fire willfully. 18 U.S.C. § 1855. Rainwater argues that there is not sufficient evidence to support the first and third elements of the offense.
 
 
 12
 The jury could have based its finding that Rainwater set fire to government lands on two theories presented by the government. First, West actually saw Rainwater start two of the three Rock Creek fires. The ignition points of these fires were not on government lands, and the fires were surrounded by containment lines before they burned on to government land. However, witnesses testified that they believed that the fires jumped the containment line and spread on to government land. Based on this evidence, a reasonable jury could find that Rainwater burned land owned by the United States.
 
 
 13
 The government's second theory involved the third fire along Rock Creek, east of the two fires Officer West saw Rainwater set. This fire definitely burned government land, but began before West arrived on the scene; therefore, there was no eyewitness to the fire's inception. However, Forest Service officials testified that they located three ignition points for this fire along Rock Creek Road and that they found no source for the fire other than Rainwater. No evidence of ignition tools was found on the scene, and Rainwater was the only unauthorized person found in this area. Also, of the three fires along Rock Creek, this fire was closest to Douglas's cabin. When West came upon Rainwater, Rainwater was travelling east, back towards Douglas's cabin. A reasonable jury could conclude that Rainwater left Douglas's cabin travelling west, set the eastern fire before Officer West arrived, travelled further west, then doubled back and headed east, and then set the two fires witnessed by West. Therefore, we affirm the district court's denial of Rainwater's motion for a judgment of acquittal.
 
 
 14
 Next, Rainwater argues that he was so intoxicated that he could not have set the fires willfully. In United States v. Newman, 889 F.2d 88, 92 (6th Cir.1989), cert. denied, 110 S.Ct. 2566 (1990), this court recognized that a defendant could be too intoxicated to formulate specific intent. Rainwater contends that the evidence of his voluntary intoxication was so overwhelming that no reasonable jury could find that he was capable of intentional behavior. However, the government presented ample evidence that Rainwater, despite the incredible amount of alcohol that he had consumed, was capable of intentional acts. According to West's testimony, Rainwater twice stopped his ATV, leaned over to the embankment, and touched the lighter to the underbrush; Rainwater maneuvered his ATV over a winding, rugged road, steering with one hand while gesturing obscenely with the other; and Rainwater managed to stay atop his ATV even after the seat fell off. Rainwater admitted that he knew there was government land in the area and that he knew that due to a recent dry spell the chance of fires was high. Also, Rainwater testified that he attempted to elude West and taunted West with obscene gestures because that is what he always does when he encounters law enforcement officers. Based on this evidence, a reasonable juror could conclude that Rainwater, despite the amount of alcohol he had consumed, retained the ability to perform difficult physical tasks and clearly understood the situation he was in and reacted to it in a manner consistent with his past behavior. Therefore, we conclude that there was sufficient evidence to allow a reasonable jury to find that Rainwater was capable of intentional behavior. See id. at 92-93 (defendant's ability to perform difficult tasks supported finding that defendant was capable of intentional behavior).
 
 III
 
 15
 Rainwater argues that the district court committed two errors in determining his sentence. First, Rainwater argues that the court incorrectly applied U.S.S.G. § 2K1.4(a)(1) in determining his base offense level. Pursuant to U.S.S.G. § 2K1.4(a)(1), a base offense level of 24 is appropriate if the district court finds that:
 
 
 16
 ... the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly; or (B) involved the destruction or attempted destruction of a dwelling;
 
 
 17
 Application note 2 to U.S.S.G. § 2K1.4 explains that:
 
 
 18
 Creating a substantial risk of death or serious bodily injury includes creating that risk to firefighters and other emergency and law enforcement personnel who respond to or investigate an offense.
 
 
 19
 Application of an offense level of 24 and a criminal history category of III yields a sentencing range of 63 to 78 months. However, the statutory maximum under 18 U.S.C. § 1855 is 60 months. Therefore, the district court sentenced Rainwater to the statutory maximum of five years.
 
 
 20
 We find no error in the district court's calculation of the sentence. The district court found that Rainwater knowingly created a substantial risk of harm to the forestry officials by setting the fires when he knew it was the dry season and by leading the officers on a wild chase over the winding backwoods roads. These findings are not clearly erroneous and therefore support the district court's application of U.S.S.G. § 2K1.4(a)(1).
 
 
 21
 Next, Rainwater contends that he was entitled to a two-level reduction pursuant to U.S.S.G. § 3B1.2(b) because he was a minor participant in the criminal activity. Application note 3 to § 3B1.2 defines a minor participant as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." Rainwater started the Rock Creek fire all by himself. Therefore, there were no other participants who could be more culpable, and the two-level reduction was properly denied.
 
 IV
 
 22
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Litton Branch flows south into Rock Creek. Rock Creek flows east into Jellico Creek, which in turn flows south into the Cumberland River