**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jamie Scott ABNER, Defendant–
Appellant.**

No. 92–5657.

United States Court of Appeals,
Sixth Circuit.

Argued April 29, 1993.

Decided Sept. 13, 1994.

**252**

David A. Marye, Asst. U.S. Atty. (argued and briefed), Karen K. Caldwell, U.S. Atty., Lexington, KY, for plaintiff-appellee.

Mike Dean, London, KY (argued and briefed), for defendant-appellant.

Before: JONES and BATCHELDER, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendant–Appellant Jamie Scott Abner appeals his conviction for setting fires on federal property. Because we find that there is insufficient evidence to support his conviction, we reverse.

### I.

On January 16, 1992, Abner was charged in a superseding indictment with the unauthorized and willful setting of fires in timber, underbrush and grass upon lands owned by and under the exclusive jurisdiction of the United States, in contravention of 18 U.S.C. § 1855. The particular lands burned, as described in the indictment, are "Tract Numbers R–535 and R–3094X, Redbird Ranger District, Daniel Boone National Forest, Clay County, Kentucky." J.A. at 9.

Abner's jury trial began on February 24, 1992. The evidence at trial showed the following:

In late October 1991, due to the dry weather, there was a danger of fires in the Daniel Boone National Forest, a federally-owned property. On October 30, 1991, Kentucky's Governor issued a proclamation that an emergency situation existed in twenty-five Eastern Kentucky counties because of the extraordinary fire hazard conditions. On October 30, 1991, over 700 fire fighters were fighting approximately thirty to forty-five fires in that area.

On November 1, 1991, at 7:30 p.m., United States Forest Service ("USFS") Officer Harold Sizemore was dispatched to the Crane Creek area of Clay County, Kentucky to check on a reported fire. At 7:45 p.m., while in route to the Crane Creek area, Sizemore overheard a radio dispatch from the Manchester, Kentucky Police Department stating that there were reports of fires being set on Big Bullskin Road ("Bullskin"), Kentucky Highway ("Ky. Hwy.") 1482. At 8:30 p.m., USFS Officer Dennis Whitehead overheard a radio transmission from the Manchester Police Department that someone in a maroon Ford Thunderbird was in the area of Bullskin setting fires. While returning from the area of the Crane Creek fires, Sizemore heard Whitehead say on the radio that someone in a maroon Ford Thunderbird was suspected of being involved in the fires. Sizemore then proceeded towards the Bullskin area fires. Other officers from the USFS Redbird District Office were also dispatched to assist with the fires. Upon arriving on Bullskin Road at 8:30 p.m., Sizemore spotted one fire near "Stable Hollow," another one further up the road near "Danger Branch," and a third near the intersection of Ky. Hwy. 1482 and Ky. Hwy. 484 in an area known as "Panco." Sizemore then drove to the

USFS's Big Creek Office, approximately twelve miles south of Oneida, Kentucky.

At 10:06 p.m., USFS Officer Reed Wetter, who was parked at the intersection of Ky. Hwy. 1482 and Ky. Hwy. 66 at Oneida, observed a maroon Ford Thunderbird being driven erratically. Wetter stopped the vehicle. Paul Lacy Abner ("Paul") was driving the car while Defendant Abner was in the front passenger seat and Robert Hacker ("Robert") was in the back seat. The vehicle belonged to Abner's mother. Because they appeared intoxicated, Wetter radioed the Kentucky State Police for assistance. When a Kentucky State Police Officer arrived, Abner was arrested for public intoxication. Abner denied any involvement in setting the fires.

Penny Bowling testified that the following night, November 2, 1991, she was with Abner, driving Abner's car at his request. While they were driving through one of the areas where fires were burning, Abner told Bowling that he and some friends had set some fires the night before. According to Bowling, the persons he named were Paul Lacy, Robert and another name which she did not recognize or remember. Bowling testified that Abner said that he and Robert set the fires, but he did not tell her why or how. Abner also allegedly showed her two or three places where they set the fires. She later showed the locations to the USFS officers.

Bowling also testified that while she was driving Abner's car on November 2, 1991, she saw some fire fighters along the road. Thinking it was a road block, she started to slow down. Bowling testified that Abner then stated that the "law" had been looking for his car, that he and Robert had gone to jail the previous night for being drunk, and he and Robert had been concerned that they were arrested for setting the fires.

Abner, in a written statement admitted into evidence, denied setting fires on Bullskin; however, he admitted being in the area.

After all the evidence was received, Abner moved for a judgment of acquittal. The district court denied Abner's motion. There-

after, the jury found Abner guilty of violating Section 1855.

## II.

Abner raises several arguments on appeal. First, Abner contends that there is not sufficient evidence to support the jury's verdict. Put another way, he claims that the trial court erred by denying his motion for a judgment of acquittal. We agree. Because this contention requires that we reverse Abner's conviction, we do not address his other arguments. The test for denial of a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure is the same as the test for reviewing a claim that the evidence is insufficient to support a conviction. *United States v. Pennyman,* 889 F.2d 104, 106 (6th Cir.1989). In reviewing claims for sufficiency of the evidence to support a conviction, this court, while reviewing the record in the light most favorable to the prosecution, should grant relief only if it is found that upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979); *see also United States v. Acosta–Cazares,* 878 F.2d 945, 954–52 (6th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). We have said that

> A defendant claiming "insufficiency of the evidence bears a very heavy burden." On review, all evidence must be construed in a manner most favorable to the government. Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.

*United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.) (citations omitted), *cert. denied,* 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986).

Section 1855 states, in pertinent part:

> Whoever, willfully and without authority, sets on fire any timber, underbrush, or grass or other inflammable material upon the public domain or upon any lands owned or leased by or under the partial, concurrent, or exclusive jurisdiction of the United

States, or under contract for purchase or for the acquisition of which condemnation proceedings have been instituted, or upon any Indian reservation or lands belonging to or occupied by any tribe or group of Indians under authority of the United States, or upon any Indian allotment while the title to the same shall be held in trust by the Government, or while the same shall remain inalienable by the allottee without the consent of the United States, shall be fined under this title or imprisoned not more than five years, or both.

In order to convict Abner under Section 1855, the government, in this case, had to prove that: 1) Abner set on fire land owned by the United States; 2) Abner did not have the authority to set on fire this land; and 3) Abner set this land on fire willfully. *See United States v. Rainwater*, No. 92–5504, 1993 WL 47198 (6th Cir. Feb. 23, 1993) (unpublished per curiam).[1]

■ Abner contends that there is no evidence indicating that he and his accomplices acted willfully, either in setting the fires or in having the fires burn federal property.[2] He avers that the government showed, at best, that he admitted starting fires on private property.

The government counters, arguing that there is sufficient evidence of Abner and his accomplices' willfulness. The government points to the following evidence it contends implicates Abner and shows Abner's willfulness: 1) Abner's mother's vehicle was stopped within a few miles of the fires on November 1, 1991, the night the fires started and Abner was arrested for public intoxication; 2) Abner produced a disposable lighter after he and his cohorts were stopped; 3) the forest fire and arson investigators were unable to find any evidence of any accelerant or article used to ignite the fires; 4) the use of a cigarette lighter to start a fire would not leave any evidence to explain the origin of the fire; 5) no new fires were begun in the area after Abner's arrest; and 6) Abner admitted to Bowling that he set the fires. In addition to this evidence, the government argues the jury may consider the natural and probable results of the acts committed by Abner and the fact that Abner cannot avoid responsibility for an act by deliberately ignoring obvious facts. As a result, the government argues that the jury was reasonably entitled to make the following inferences: 1) because Abner lived within approximately two miles of where the fires began, the jury could infer that he was aware of the extreme danger of fires existing at that time, that Daniel Boone National Forest was government land, and that he and his accomplices were aware of the location and particularly the proximity of the government land in relation to where the fires were started; and 2)

---

**1.** Abner also argues on appeal that he could not be found guilty of violating Section 1855 because the fires did not originate on United States property, but rather were started on private property. Shirley Black, a land surveyor with the USFS, testified that neither of the two fires with which Abner was charged were set on Federal land. Black testified that the boundary of tract R–535 was approximately 300–400 feet from where the fire was started that ultimately burned onto it. He also testified that the boundary of tract R–3094X was approximately 1000 feet away from where the fire started that eventually burned onto it.

In *Rainwater*, 1993 WL 47198 at **2, the panel equated the phrase "sets on fire" with burning. The panel stated that in order to convict the defendant, "the government had to prove 1) that [the defendant] *burned* land owned by the United States, 2) that [the defendant] did not have authority to set the fire, and 3) that [the defendant] set the fire willfully." *Id.* (emphasis added). Using that understanding of the phrase, "sets on fire," the panel reasoned that the jury could have

found that the defendant set fire to government lands on two theories, one of which was that the defendant burned government land even though the ignition points of the fires were not on government land. The panel stated:

> The ignition points of these fires were not on government lands, and the fires were surrounded by containment lines before they burned on to government land. However, witnesses testified that they believed that the fires jumped the containment line and spread on to government land. Based on this evidence, a reasonable jury could find that [the defendant] burned land owned by the United States.

*Id.*

We express no opinion on the correctness of the *Rainwater* decision. However, even if "sets on fire" means "burns" as opposed to "starts" or "originates," there is nevertheless insufficient evidence that Abner willfully started fires with the intent to have those fires spread onto United States property.

**2.** Abner also maintains that he did not start any of the fires.

that Abner and his cohorts consciously intended or deliberately disregarded the obvious when they set private property on fire.

The term "willfully" has not been defined as it relates to Section 1855;[3] however, for purposes of this opinion, we find useful the district court's jury instructions regarding the term. The district court stated that "[a]n act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." J.A. at 209. *Cf. Rainwater*, 1993 WL 47198 at **3 (implying that the term "willful" in § 1855 included intentional behavior).[4] However, neither the defendant nor the government object to the instruction on "willfully" given to the jury in this case; neither does either party attempt to complain about these instructions on appeal.

Given the district court's definition of "willfulness," we agree with Abner that there is insufficient evidence. Putting the government's case in its best light, it showed the following: Abner lived in close proximity to the federal property; Abner admitted setting on fire private property which was anywhere from 300 to 1000 feet from the public property; there was an extreme danger of fires spreading due to the dry weather in Eastern Kentucky. From this evidence, the jury was asked to infer that Abner and/or his accomplices knew where the federal property began, that they knew that the fires which were started on private property would spread to public property, that Abner and his cohorts willfully started the fires on private property, and that they started the fires on private property with the specific intent that they spread onto federal property.

We hold that, given the limited nature of the actual evidence, those inferences from that evidence were unreasonable. None of the evidence listed above indicates that Abner did anything other than start fires on private property. Therefore, we do not think any rational jury could convict Abner for *willfully* setting on fire lands owned by the federal government.

A comparison to the facts in *Rainwater* indicate the failure of the government to prove willfulness in Abner's case. In *Rainwater*, the defendant was seen by an officer starting the fires by touching the lighter to the underbrush. After starting the fires, the defendant attempted to elude the officer and

---

3. We note that previous versions of this Section 1855 used the phrase "willfully or maliciously" to indicate the *mens rea* needed to be convicted under those statutes. Congress subsequently amended the section by deleting the phrase "or maliciously" because it found that phrase to be redundant. S. 2982, 60th Cong., 1st Sess. § 54 (1908).

4. The district court further instructed the jury:

[A] defendant's state of mind can be proved indirectly from the surrounding circumstances. This includes things like what the defendant said, what the defendant did, how the defendant acted, and any other facts or circumstances in evidence that show what was in the defendant's mind.

You may also consider the natural and probable results of any acts that the defendant knowingly did, and whether it is reasonable to conclude that the defendant intended those results....

No one can avoid responsibility for an act by deliberating [sic] ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that his actions would cause lands owned by the United States to burn, then you may find that he knew that his actions would cause lands owned by the United States to burn.

But to find this, you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that his actions would cause lands owned by the United States to burn, and that the defendant deliberately closed his eyes to what was obvious. Carelessness or negligence or foolishness on his part is not the same as knowledge and is not enough to convict.

J.A. at 210–11.

We note that the part of the jury instruction which deals with deliberate ignorance should not have been given in this case. Where the evidence relative to knowledge shows that the defendant had actual knowledge of the facts in question, or where the only evidence relative to knowledge shows that the defendant did not have actual knowledge and there is no evidence that the defendant made some deliberate effort to avoid obtaining actual knowledge, an instruction on deliberate ignorance is not appropriate. *United States v. Hiland*, 909 F.2d 1114, 1130 (8th Cir.1990). The fact that there is some evidence of actual knowledge will not render the instruction inappropriate so long as there is also sufficient evidence to support an inference of deliberate ignorance. *Id.* In the case before us, however, there was no evidence of actual knowledge and no evidence that Abner deliberately ignored the obvious.

gestured obscenely at the officer. In addition, the defendant admitted that he knew that there was government land in the area and that he knew that due to a recent dry spell the chance of fires was high. Finally, there was evidence that the defendant started one of the fires on public property. From those facts, it could be reasonably inferred that the defendant willfully set on fire public property.

In this case, the facts which would show willfulness are lacking. There were no eyewitnesses, no evidence that Abner knew that the area contained government land, and no evidence that Abner knew that the chance of fires was high due to the recent dry spell. There was no evidence that he deliberately ignored the obvious. These deficiencies are fatal to the government's case. This evidence, without more, is insufficient proof upon which to convict the defendant in the instant case.

### III.

For the foregoing reasons, we reverse Abner's conviction.