41 F.3d 1508
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Melvin TATE, Defendant-Appellant.
 No. 94-5061.
 United States Court of Appeals, Sixth Circuit.
 Nov. 16, 1994.
 
 Before KENNEDY, WELLFORD, and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 A jury found defendant Melvin Tate guilty of possession of crack cocaine with intent to distribute it (a violation of 21 U.S.C. Sec. 841(a)(1)) and possession of a firearm by a convicted felon (a violation of 18 U.S.C. Sec. 922(g)). Mr. Tate has appealed his conviction, contending that the district court erred in two respects: (1) by denying a motion for acquittal based on an alleged insufficiency of the evidence, and (2) by denying a motion to suppress crack cocaine and a pistol that allegedly belonged to the defendant. Finding neither contention persuasive, we shall affirm the conviction.
 
 I.
 
 2
 The defendant, Melvin Tate, was arrested on January 7, 1993, in connection with the events that led to the present conviction. He had previously been convicted of selling a "rock" of cocaine to an undercover police officer in September of 1989, and he was still on parole for that offense. He had also been convicted of possessing cocaine with intent to sell it in April of 1989; of selling an undercover police officer one rock of cocaine in February of 1989; of possessing marijuana with intent to sell it in October of 1987; and of a variety of other offenses going back almost nine years.
 
 
 3
 Mr. Tate, a resident of Memphis, Tennessee, lived in what was described at trial as a high crime area, in which drug activity and prostitution were widespread. Memphis police officer Curtis Bolden, who was assigned to patrol the area on a regular basis, testified at trial that he knew Mr. Tate by name. The officer had previously told the court, during a hearing on the suppression motion, that he had spoken with Tate numerous times in the past; that he had seen Tate engaging in apparent drug transactions before, and that Tate had run from him on such occasions; that other officers had told him of Tate's past drug arrests; and that people in the area had told him Tate sold drugs.
 
 
 4
 Shortly before midnight on the evening in question here, Officer Bolden and his partner, Officer Jason Fleming, were on patrol in Mr. Tate's neighborhood. Their squad car stopped at an intersection near Mr. Tate's house, they testified, at which point their headlights picked up Melvin Tate standing in the street next to a parked Chevrolet Blazer. Officer Bolden said that Tate, who had put his hand inside the Blazer, appeared to be engaging in an "exchange" with an individual sitting in the driver's seat. Officer Bolden inferred that Tate was handing drugs to the driver of the Blazer.
 
 
 5
 When Mr. Tate saw the police car, according to Officer Bolden, he pulled his arm out of the window and began to walk quickly toward his house. Officer Bolden got out of the squad car, Tate ran into the house, and the officer ran after him. The two men struggled. In the course of the struggle, according to the prosecution's evidence, Tate shot the officer in the hand with a pistol.
 
 
 6
 Mr. Tate was ultimately subdued, and the police allegedly found on his person a quantity of money,[1] an electronic pager or "beeper," a glass pipe for smoking crack cocaine, and five rocks of crack, each worth about $20 on the street. Inside the house, where the struggle took place, the police allegedly found a spent shell and a .38 caliber semi-automatic pistol loaded with five rounds of live ammunition.
 
 
 7
 Mr. Tate was indicted of charges of (1) possession of a controlled substance with intent to distribute it, (2) carriage and use of a firearm during and in relation to a drug trafficking offense, and (3) knowing possession of a firearm after having been convicted of four offenses specified in the indictment. Mr. Tate moved to suppress the five rocks of crack and the firearm. The motion was denied by the district court on the recommendation of the magistrate judge who had conducted the evidentiary hearing. The case subsequently went to trial.
 
 
 8
 Mr. Tate took the stand in his own defense. He denied ever having seen the pistol, denied having shot Officer Bolden, and denied having been in possession of any crack cocaine at the time of his arrest. Mr. Tate's testimony, and that of several other defense witnesses, suggested that the police had planted the drugs after Tate had been subdued. The jury evidently believed the prosecution's witnesses rather than the defendant's; although Mr. Tate was acquitted of Count 2 of the indictment, he was found guilty of Counts 1 and 3. A motion for acquittal on all counts having been overruled, the district court entered a judgment of conviction. This appeal followed.
 
 II
 
 9
 The first issue raised on appeal is whether the evidence was constitutionally sufficient to sustain the defendant's conviction for possession of the five rocks of crack cocaine with intent to distribute them. No drugs were found in the Blazer or on the person of its owner, a man named Jason Bobo, and Mr. Tate argues that if a drug transaction occurred at all, "the only possible inference is that any exchange was from Bobo to the defendant."
 
 
 10
 We disagree. The jury could well have inferred that Mr. Bobo was about to get some crack from Mr. Tate when the squad car appeared on the scene, and that the drugs were still in Mr. Tate's hand when he pulled his arm out of the window of the Blazer and hurriedly decamped. (Another possibility, of course, is that Mr. Bobo did get some crack but managed to drop it on the ground before he was searched.)
 
 
 11
 The inference suggested now--that Bobo was transferring drugs to Tate--is not one the jury was invited to draw at the time of trial. Both Tate and Bobo denied any transfer; the theory offered at trial, as we have said, was that the drugs had been planted on Mr. Tate by the police.
 
 
 12
 It was Tate, moreover, and not Bobo, who had possession of the beeper. Drug dealers frequently carry beepers to facilitate communication with customers, and the jury was entitled to view Mr. Tate's possession of the beeper as evidence that he intended to distribute the drugs, just as he had done in the past.
 
 
 13
 In reviewing claims of insufficient evidence, the court must "review[ ] the record in the light most favorable to the prosecution, [and] should grant relief only if it is found that ... no rational trier of fact could have found proof of guilt beyond a reasonable doubt." United States v. Abner, 35 F.3d 251, 253 (6th Cir.1994), citing Jackson v. Virginia, 443 U.S. 307, 324 (1979). Circumstantial evidence alone may sustain a conviction, and the evidence need not remove every reasonable hypothesis but guilt. United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989). The defendant who claims insufficient evidence has "a very heavy burden," Abner, 35 F.3d at 253, and we are not persuaded that Mr. Tate has met that burden here.
 
 
 14
 The second issue is whether the district court committed reversible error by denying the motion to suppress evidence. We are satisfied that the court's ruling on the suppression motion was not erroneous.
 
 
 15
 Mr. Tate argued before the district court that Officer Bolden lacked probable cause to pursue him and place him under arrest, and that the drugs and pistol should be suppressed as "fruit of the poisonous tree." But under the version of the facts accepted by the district court--a version that we are in no position to second-guess--there was nothing unreasonable in either the pursuit or the arrest.
 
 
 16
 As to the pursuit, Officer Bolden recognized Mr. Tate as a person he had reason to believe was a drug dealer. It was the night season, in a high crime area, and Mr. Tate was in the act, apparently, of handing something to the occupant of a vehicle stopped outside the Tate home. When he saw Officer Bolden, Mr. Tate ran away. To suppose that the officer should not have given chase, under these circumstances, would be utterly unreasonable. Cf. United States v. Pope, 561 F.2d 663, 668 (6th Cir.1977) ("Flight invites pursuit...."). And given probable cause, hot pursuit of a fleeing felon justified warrantless entry into the felon's home. United States v. Santana, 427 U.S. 38, 42 (1976); United States v. Johnson, 9 F.3d 506, 509 (6th Cir.1993). Probable cause clearly existed here, under the factual scenario accepted by the district court, because (1) Mr. Tate was present in a neighborhood notorious for drug trafficking, (2) he was "engaging in a sequence of events typical of a drug transaction," (3) he fled after being confronted by the police, and (4) it was reasonable to suppose that his purpose in running into the house was to conceal the subject of his activities. United States v. Hughes, 898 F.2d 63, 64 (6th Cir.1990) (adopting these as factors "[t]o be assayed in determining whether the 'totality of the circumstances' provides probable cause in a drug case").
 
 
 17
 As to the arrest, it follows from what we have already said that the arrest was not unreasonable. In light of the fact that Mr. Tate had apparently shot Officer Bolden by the time the arrest was effected, moreover, it is perfectly obvious that the arrest was permissible.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 We do not know the amount, although the jury presumably did. The prosecutor said in his opening statement that the money came to between $110 and $115. A photograph of the money was received in evidence, but we have not been furnished a copy