NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0013n.06
Filed: October 6, 2004

No. 03-5960

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GARY COPELAND, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | AT MEMPHIS |
| Defendants-Appellants. | ) | |
| | ) | |

Before: MOORE and SUTTON, Circuit Judges; and ADAMS, District Judge.[*]

ADAMS, J.

A jury convicted Defendant Gary Copeland of attempting to board an aircraft with a concealed dangerous weapon that would be accessible to him during flight, in violation of 49 U.S.C.§ 46505. On appeal, Copeland argues that the trial court erred in denying his motion for judgment of acquittal on the grounds that no reasonable jury could have found, beyond a reasonable doubt, that he had actual knowledge that a firearm was in his carry-on luggage. For the reasons that follow, we reject Copeland's arguments on appeal and affirm the district court's denial of his motion for judgment of acquittal, thus affirming his conviction.

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

No. 03-5960
*United States v. Copeland*


I. FACTS

On November 7, 2002, Defendant Gary Copeland was scheduled to travel with his wife on Air Tran Airlines, Flight No. 520 from Memphis, Tennessee to Atlanta, Georgia. After a brief layover they were to continue on to Chatham, Virginia to visit a relative. Flight 520 was scheduled to depart at 6:15 A.M.

Both Copeland and his wife testified that the week of the scheduled trip had been a hectic one. Copeland had been occupied with a large project for work and was attending a class three nights a week after work. The night before they were scheduled to fly out, Copeland arrived home at approximately 9:30 P.M. The two had a late dinner and began packing for the trip. They did not get to bed until around 1:00 A.M. and awoke sometime before 4:15 A.M. Copeland intended to carry a briefcase and book onto the airplane. After having breakfast, Copeland continued to pack items into his briefcase.[1] Both Copeland and his wife claimed the briefcase was stuffed full. Copeland further described it as being so full that he could not zip it.

The two rushed to the airport to catch their flight. On the way to the airport, Copeland removed a Swiss Army knife from his key chain because he did not want to get caught going through security with it. When they arrived at the airport, Copeland assisted his wife in carrying the luggage to the ticket counter and then left to park the car. After joining his wife in the airport, the couple got their tickets and approached a security checkpoint, which required the presentation of their

---

[1]The briefcase that Copeland was intending to carry onto the plane was not of the box-type but more like a bag.

identification and tickets. The couple then placed their carry-on items onto the belt of the x-ray screening machine and proceeded to walk through the metal detector.

Copeland's wife retrieved her items when they exited the x-ray machine. The screener, Mr. Eddie Riley, stopped the x-ray machine while Copeland's briefcase was still inside. He identified, from the x-ray, that a firearm was contained within the briefcase. Mr. Riley contacted his supervisor and the airport's legal enforcement officer at the airport to come to the security checkpoint and inspect the briefcase. At that time, Copeland "slapped his head and said oh, no, did I leave my speed loader in there[?]" While detained at the security checkpoint, Copeland told Mr. Riley, two or three times, that there was only ammunition in the briefcase. Mr. Riley testified that the firearm was not hidden in the briefcase and was easily spotted.[2]

Officer Terry Cochran of the Memphis International Police Department arrived at the security checkpoint. He asked Copeland if the briefcase in question was his. Copeland confirmed that it was. Copeland did not ask what the problem was but made the statement that at least his gun was not in the bag. Officer Cochran told Copeland that he believed there *was* a firearm in the briefcase. As Copeland was escorted away from the machine, he pointed to a pocket of the briefcase indicating to look in that pocket because that would be where the gun was, if it was there. Officer Cochran looked in the designated pocket and discovered a loaded .357 Magnum, holster, loaded speed loader, Tennessee permit card, and a badge that contained the words "handgun permit" and the permit number.

---

[2]In Copeland's brief, he claims Mr. Riley testified that Copeland was not acting suspiciously. However, this is an incorrect statement. Mr. Riley testified that he could not say how Copeland was acting because he did not look at Copeland.

Because of the badge, Officer Cochran asked if Copeland was a law enforcement officer. He stated that he was not. Copeland offered to take the firearm back out to his car, but his request was denied. Officer Cochran testified that he did not know if Copeland had forgotten the gun. Copeland asked if he would lose his permit to carry the weapon. Officer Cochran responded that there was a good possibility he could.

Special Agent Daniel Sobolewski of the FBI interviewed Copeland at the airport. Copeland admitted to him that the firearm was his and that he carried it every day for protection. At all times, Copeland was cooperative with the officers.

The checkpoint supervisor prepared a report of the incident.[3] Mr. Riley and Officer Cochran reviewed the document and Mr. Riley signed it at the bottom. Both testified that it was a true and accurate account. The incident report stated that the reason for carrying the weapon was, "forgot firearm in bag." Mr. Riley testified that Copeland had not said this to him personally.

On direct examination, Copeland stated that the last time he remembered having his firearm was at the firing range the previous weekend. He claimed that he had no idea it was in his briefcase when he went to the airport. On cross-examination, Copeland testified that he put the firearm, speed loader, holster, permit and badge into the briefcase and that he carries them in the same pocket every day. When questioned, he acknowledged that he would know where his weapon was if it was needed.[4] Copeland described the weapon as relatively heavy, something that could not have been mistaken for papers or a compact disc. He admitted he was the only person who packed the briefcase

---

[3]The security checkpoint supervisor was not presented as a witness at trial.

[4]Copeland's testimony was that if he were carjacked he would know where his weapon was.

and that he had handled it while packing.

It is noted that the Government admitted as exhibits the firearm, holster, permit card, badge, speed loader, carry-on bag, ammunition, and the incident report.

## II. PROCEDURAL HISTORY

On November 7, 2002, a Criminal Complaint was filed against Copeland alleging that he "attempt[ed] to board an aircraft intended for operation in air transportation while having on or about his person and property a concealed dangerous weapon, specifically, a loaded firearm." Copeland was indicted for this offense on November 12, 2002. A jury trial was held on March 20, 2003. Copeland made a motion for judgment of acquittal at the end of the Government's case, which was denied. Copeland presented himself and his wife as witnesses for the defense. The motion for judgment of acquittal was renewed after all evidence had been presented. This motion was also denied. Copeland was convicted by the jury on the sole count in the Indictment. He was sentenced to one year of probation. One week after completion of trial, Copeland filed a renewed motion for judgment of acquittal or alternatively a motion for a new trial. He raised no new grounds for the motion, but stated that "based on the proof presented by both sides at trial, no reasonable jury could have found him guilty, by proof beyond a reasonable doubt, of violating 49 U.S.C. §46505." This motion was also denied in a written order by the court. Copeland timely filed a notice of appeal.

## III. STANDARD OF REVIEW

On appeal, Copeland argues that the trial court erred in denying his motion for judgment of acquittal on the grounds that no reasonable jury could have found, beyond a reasonable doubt, that he had actual knowledge that a firearm was in his carry-on luggage. This court reviews de novo the

denial of a motion for judgment of acquittal. *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir. 1996). Such a motion challenges the sufficiency of the evidence supporting the conviction. *See* Fed.R.Crim.P. 29; *United States v. King*, 169 F.3d 1035, 1038 (6th Cir. 1999) (citation omitted). An appellate court must affirm a conviction if, "after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *United States v. M/G Transport Services, Inc.,* 173 F.3d 584, 589 (6th Cir. 1999) (emphasis omitted) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1978)).

The burden is on the appellant to show that the "government failed to prove beyond a reasonable doubt that he committed the elements of the crimes for which he was charged." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). This Court "will reverse a judgment for insufficiency of evidence only if th[e] judgment is not supported by substantial and competent evidence upon the record as a whole, and . . . this rule applies whether the evidence is direct or wholly circumstantial." *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994).

A reviewing court may not independently judge the weight of the evidence or assess the credibility of the witnesses. *United States v. Wells*, 211 F.3d 988, 1000 (6th Cir. 2000); *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995). "If the evidence, however, is such that a rational fact finder must conclude that a reasonable doubt is raised, this court is obligated to reverse

a denial of an acquittal motion." *United States v. Lloyd*, 10 F.3d 1197, 1210 (6th Cir.1993) (citing

*United States v. Collon*, 426 F.2d 939, 942 (6th Cir.1970)).

## IV. SUFFICIENCY OF EVIDENCE

It is first noted that during oral argument, Copeland's counsel stated that this Court was to

look only to the evidence presented by the Government in its case in chief. This, however, is an

incorrect statement. In *United States v. Black*, 525 F.2d 668 (6th Cir. 1975), this Court stated, "[t]he

rule is settled that when a defendant introduces evidence, he waives any objection to the denial of

his motion to acquit at the close of the government's case." *Id.* at 669 (citing *United States v.*

*Calderon*, 348 U.S. 160, 164, n.1, 75 S.Ct. 186, 99 L.Ed. 202 (1954); *United States v. Ambrose*, 483

F.2d 742 (6th Cir. 1973)). In the case at bar, Copeland introduced evidence after the close of the

Government's case and after the district court denied his initial motion for judgment of acquittal.

Therefore, any objection to the district court's denial of Copeland's first motion for judgment of

acquittal has been waived.

Copeland argues that based on the evidence presented at trial and the instructions given by

the district court, no reasonable jury could have found him guilty by proof beyond a reasonable

doubt. At trial, the jury was given the following instruction on the elements of a violation of 49

U.S.C. §46505:

> The United States must prove each of the following elements beyond a reasonable
> doubt:
> (1) That the defendant must have been on or attempting to get on an aircraft[;]
> (2) The aircraft must have been in or intended for operation in air transportation[;]
> (3) The defendant must have knowingly had on or about his person or property a
> concealed and dangerous weapon[;] and
> (4) That dangerous weapon would be accessible to the defendant during the flight.

Copeland does not dispute that he was attempting to board an aircraft that was intended for operation in air transportation or that the weapon at issue would have been accessible to him during the flight. Copeland's only argument on appeal is that the Government presented insufficient evidence for the jury to find that he "knowingly" attempted to board an aircraft with the firearm.

The district court defined the term "knowingly" as meaning "the act was done voluntarily and intentionally and not because of mistake or accident." It further defined the term by stating:

> Mr. Copeland is charged with knowingly attempting to board an aircraft with a dangerous weapon, to-wit[:] a pistol. If you find that Mr. Copeland did not knowingly have the pistol on or about his person or property, you must acquit him. If you find that Mr. Copeland did voluntarily and intentionally have the pistol on or about his person or property and attempted to carry it aboard an aircraft, you may find him guilty.

The district court also provided a definition for intent:

> Intent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider anything done or omitted by the defendant and all facts and circumstances in evidence which indicate his state of mind.
>
> You may consider it reasonable to draw the inference and to find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

Copeland claims that the evidence presented at trial demonstrated only that he had possession of the firearm, that the firearm was found in his carry-on bag and that he had stated, "at least the gun is not in the bag." Copeland further points out that no witnesses testified as to what he describes as

a "typical basis for proving actual knowledge,"[5] such as statements or actions made by him, or other evidence indicating that he had actual knowledge that his firearm was on or about his person when he went through the security checkpoint at the airport.

Although there is no direct evidence demonstrating that Copeland had knowledge the firearm was in his carry-on bag, sufficient circumstantial evidence was presented for the jury to infer that Copeland placed the firearm into his carry-on bag and knowingly attempted to board the airplane with it. As stated above, "[c]ircumstantial evidence alone is sufficient to sustain a conviction." *Abner*, 35 F.3d at 253.

During trial, Mr. Riley, Officer Cochran, and Agent Sobolewski testified for the Government. Mr. Riley testified that after he confined Copeland's briefcase inside the x-ray screening machine, Copeland stated to him, two or three times, that there was only ammunition in the briefcase. Officer Cochran testified that after he told Copeland he believed a firearm was in the briefcase, Copeland pointed to a pocket of the briefcase where the firearm was contained. Officer Cochran also testified that Copeland offered to take the firearm back to his car. Agent Sobolewski testified that Copeland had told him that he carried the firearm every day for protection.

Copeland points to statements that he made to the officers indicating that he had forgotten the firearm was in the briefcase. However, the jury was free to disbelieve Copeland's innocent

---

[5]Copeland argues there was no evidence that: (1) the firearm was on top of the other items in the bag or that it was concealed to a greater extent than the other items in the bag; (2) the firearm was contained in a unique container to conceal its identity; (3) he unsuccessfully attempted to check it through on a prior occasion; (4) the firearm was concealed in a way that would avoid detection; (5) he tried to avoid putting his carry-on luggage through the x-ray machine; (6) he attempted to get another to take the carry-on luggage through the checkpoint; (7) he tried to divert the screener's attention while the carry-on luggage was being screened; (8) he attempted to alter his identity; or (9) there was any purpose or need for the firearm at his destination.

explanation. *United States v. Schreane*, 331 F.3d 548, 562 (6th Cir.2003) (stating, "[i]t is well settled that when a defendant offers an innocent explanation for the incriminating facts proved by the government, the jury is free to disbelieve it.") (citation and internal quotations omitted).

During the defense case, Copeland testified to the following:  he kept the firearm in his briefcase while traveling back and forth to work; he kept the firearm, speed loader, holster, permit and badge in the same pocket everyday; he would know where the firearm was if needed; when he and his wife are going somewhere and he intends on taking the briefcase with them, he removes the firearm; he handled the briefcase while packing, both the morning of and the night before the incident; and no other person packed the briefcase.  Copeland's testimony also demonstrated that he had knowledge of all the other contents of the briefcase, including a pair of concert tickets. Although Copeland argues that the briefcase presented at trial was not packed similarly to the one he carried at the airport, this was brought to the jury's attention when Copeland was on the stand.

Copeland further testified that the last time he remembered seeing his firearm was when he went to the firing range the Sunday before.  He stated that when he goes to the firing range, he has a routine of removing the firearm from his briefcase and placing it into a canvas range bag.  He then cleans his firearm after using it and returns it to the briefcase.  Copeland stated that after he went to the range on November 3, 2002, he put the firearm into his briefcase.

In addition to the above testimony, the Government also admitted into evidence the firearm, briefcase, holster, ammunition, speed loader, badge, and permit.  Thus, the jury was able to handle this evidence and decide whether they believed, given the size, weight and location in the briefcase, Copeland could have packed and carried the briefcase without realizing the firearm was inside.

Based on a review of the record as a whole, viewing the evidence presented at trial in a light most favorable to the Government, this Court finds that there was sufficient evidence presented at trial for a reasonable jury to have found, beyond a reasonable doubt, that Copeland had actual knowledge that a firearm was in his carry-on luggage.

## V. CONCLUSION

For the foregoing reasons, it is determined that the evidence presented at trial supports a finding that Copeland knowingly attempted to board an aircraft with a concealed and dangerous weapon that would be accessible to him during flight, in violation of 49 U.S.C. § 46505. The district court's denial of Copeland's motion for judgment of acquittal was proper. Copeland's judgment of conviction is AFFIRMED.